**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1576
_____

CHANG-WEI LIN,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
                                        Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A070-703-776)
Immigration Judge: Annie S. Garcy

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2014

Before:  FUENTES, COWEN and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>

(Filed: August 4, 2014)
_____

OPINION
_____

PER CURIAM

Chang-Wei Lin ("Lin") petitions for review of the Board of Immigration Appeals'

final order of removal.  For the reasons that follow, we will deny the petition for review.

Lin, a native and citizen of China, entered the United States in 1992, and sought asylum. In 1997, the former Immigration & Naturalization Service initiated removal proceedings; the Notice to Appear charged that Lin was removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. When Lin failed to appear for his removal hearing, the Immigration Judge, on September 23, 1997, order him removed *in absentia*. Lin remained in the United States, joined a Christian Church in Grand Rapids, Michigan, and was baptized.

On March 2, 2011, Lin filed a motion to reopen in Immigration Court in order to re-apply for asylum. Lin argued that he would be persecuted in China because he would refuse to attend a registered church, and he argued that his motion was exempted from the time and number limits for motions to reopen because circumstances in China have changed for Christians since his removal hearing in 1997, and because he had new and material evidence that was previously unavailable, 8 C.F.R. § 1003.23(b)(3). Lin argued that, since the enactment of the 2005 Regulations on Religious Affairs in China (which gave limited legal protection to registered churches but not to unregistered churches), the Chinese Government has increased its persecution of Christians, specifically those who wish to practice their beliefs in unregistered or "house churches." In support of his motion, Lin submitted the 2009 State Department Country Report on Human Rights Practices for China, the 2009 State Department International Religious Freedom Report for China, the Congressional-Executive Commission on China Annual Reports for 2009 and 2010, the China Aid Association Annual Report of Persecution by the Government

2

on Christian House Churches for 2009, numerous internet news articles, and items documenting his marriage, the birth of his children, and his faith.

On May 31, 2011, the IJ denied the motion to reopen, concluding that it was untimely filed, and that the exception for changed circumstances in China did not apply to save the motion from its untimeliness. The IJ concluded that Lin's evidence showed that the Chinese Government continues to restrict all religious practice to closely controlled and government-sanctioned religious organizations and registered places of worship. The IJ noted that Lin's news articles reported a 19% increase in the persecution of members of house churches, and the detention of Christians at unregistered assemblies in Henan Province, Langzhong City, and Sichuan Province, but also showed that, nonetheless, there had been growth in the number of house churches, and that they were common throughout China. According to the International Religious Freedom Report, most unregistered churches no longer operated in strict secrecy; they openly carry out their activities. The report also stated that the Pew Research Center estimated that 50-70 million Christians in China practice without state sanction. Last, the IJ noted that Lin had personally received notice of his 1997 removal hearing, and that he did not allege that he did not appear for his hearing due to exceptional circumstances. The IJ further declined to *sua sponte* reopening Lin's removal order, see <u>Matter of J-J-</u>, 21 I. & N. Dec. 976 (BIA 1997). Lin appealed to the Board of Immigration Appeals, and asked for a remand for the purpose of terminating the removal proceedings on the basis of, in his words, "jurisdictional issues."

On February 12, 2014, the Board dismissed the appeal, adopting and affirming the IJ's decision, see Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994), and denied the request to remand and terminate the proceedings. The Board agreed that Lin's motion to reopen was untimely filed and that he failed to show changed country conditions sufficient to excuse the untimely filing. The Board specifically agreed with the IJ that the State Department reports indicated an increase in house churches in China, and that most no longer operate in strict secrecy. The Board further agreed with the IJ that Lin's new evidence, even if proved, did not show prima facie eligibility for asylum. His evidence showed that those who worshipped in unregistered churches, and their leaders in particular, generally faced harassment and mistreatment by the Chinese Government, depending on the location of the church, the size of the congregation, and the congregation's activities, but that some Christian activities were quietly tolerated or were subject to minimal supervision. In short, the harassment did not rise to the level of persecution. Moreover, Lin failed to show that the arrests of certain church leaders and general harassment of church members demonstrated that he would be singled out for persecution upon his return to China. The Board was not persuaded by Lin's specific argument that the 2005 Regulations on Religious Affairs in China demonstrated that conditions in China for Christians had changed significantly since 1997. The Board also rejected Lin's argument that the IJ had failed to consider all of his new evidence in support of his motion to reopen. Last, the Board affirmed the IJ's decision not to exercise her *sua sponte* authority to reopen Lin's removal proceedings, reasoning that an exercise

4

of this limited authority to reopen proceedings was not appropriate where Lin remained in the United States for many years after a final order of removal was issued in his case.

Regarding his request to terminate the proceedings, Lin asserted in his brief on appeal to the Board that, upon his arrival in the United States, he was served with a Form I-122; that form was not served on the Immigration Court, and, even if it was, formal exclusion proceedings should have been but were not properly commenced. Lin argued that he was an "arriving alien" and that the 1997 Notice to Appear incorrectly described him as an alien who was present in the United States without being admitted or paroled. Given the prior service of Form-I-122, the NTA was improvidently issued, he argued, and therefore removal proceedings must be terminated. Furthermore, if he had been properly placed in exclusion proceedings, he would now be eligible to adjust his status as the spouse of a United States citizen. The Board declined to consider this argument, concluding that the decision to initiate removal proceedings is discretionary and may not be reviewed by an IJ or the Board, see In re: G-N-C, 22 I. & N. Dec. 281, 284 (BIA 1998). In addition, Lin's argument was in the nature of a request to reopen the proceedings in order to seek their termination. As before, this request to reopen was untimely, and Lin had not shown that any of the exceptions to the filing deadline applied to his "arriving alien" argument.

Lin timely petitions for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). We review the denial of a motion to reopen for an abuse of discretion. Immigration & Naturalization Serv. v. Doherty, 502 U.S. 314, 323 (1992). Under this deferential standard, we will not overturn the Board's decision unless it is arbitrary,

5

irrational, or contrary to the law. See Guo v. Ashcroft, 386 F. 3d 556, 562 (3d Cir. 2004). We uphold the Board's factual determinations underlying the denial of the motion to reopen if they are "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Zheng v. Att'y Gen. of U.S., 549 F.3d 260, 266 (3d Cir. 2008) (quoting Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

We will deny the petition for review. A party may file only one motion to reopen and such motion must be filed no later than 90 days after the date of the removal order. 8 C.F.R. § 1003.23(b)(1); 8 U.S.C. § 1229a(c)(7)(C)(i). Lin's motion to reopen was filed more than 90 days after the issuance of the *in absentia* final order of removal, was untimely, and thus was properly denied on this basis. The 90-day time limit does not apply if the alien seeks reopening "based on changed circumstances arising in the country of nationality or in the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." Id. at § 1003.23(b)(4)(i). See also 8 U.S.C. § 1229a(c)(7)(C)(ii). We conclude that the agency acted within its discretion in denying Lin's motion to reopen as untimely filed because he failed to show changed country conditions in China sufficient to exempt him from the 90-day deadline. The denial of Lin's motion to reopen as untimely filed was not arbitrary, irrational, or contrary to law. We note that the agency may also deny a motion to reopen for failure to establish a prima facie case for the relief sought, in this case asylum. Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 105 (1988); Matter of Coelho, 20 I. & N. Dec. 464, 472 (BIA 1992). We further

6

conclude that the agency did not abuse its discretion in determining that Lin did not show in his motion to reopen that he is prima facie eligible for asylum.

Lin has not challenged the agency's changed country conditions or prima facie eligibility determinations. In his brief on appeal Lin argues only that the Board erred in not remanding the matter on the basis of the alleged error in the 1997 NTA, and that there is no time limit on a motion to reopen seeking to correct an error of this magnitude. Lin asserts that he was intercepted on a ship at sea outside Morehead, North Carolina, released after payment of a bond, and paroled into the United States. He therefore is an "arriving alien" who was inspected and paroled into the United States. Moreover, he did not concede the charge in the NTA that he was present in the United States without being admitted or paroled, or admit any facts in support of the charge.

Ordinarily, a motion to reopen must be filed within 90 days, but an alien who is subject to a removal order entered *in absentia* may move to reopen and rescind that order (1) within 180 days if he "demonstrates that the failure to appear was because of exceptional circumstances," or (2) at any time, provided that he shows he did not receive notice of his hearing, or shows that he was in Federal or State custody and the failure to appear was through no fault of his. 8 U.S.C. § 1229a(b)(5)(C)(i)-(ii); 8 C.F.R. § 1003.23(b)(4)(ii). Lin's argument that the charge in the NTA has no factual basis does not concern exceptional circumstances for failing to appear or concern a failure to receive notice of the removal hearing, and he plainly was not incarcerated during the relevant time period. The 90-day deadline therefore applies.

7

Lin argues that the *in absentia* order is a "legal nullity," and it "is not possible to begin counting days from a legal nullity," see Petitioner's Brief, at 16, but the case he relies on, Noriega-Lopez v. Ashcroft, 335 F.3d 874, 884 (9th Cir. 2003), held that the Board lacks authority to enter an order of removal in the first instance and must instead remand to Immigration Court. The case does not involve a motion to reopen, or hold, as Lin suggests, that an untimely motion to reopen challenging a removal charge sustained by an Immigration Judge *in absentia* is not subject to the statutory and regulatory time limitations. In this case, Lin was duly notified of the removal charge against him prior to his 1997 hearing and chose not to attend his hearing because he feared that he would be arrested. A.R. 51. No due process issue is raised where an alien deliberately fails to appear and refute the charge of removal when given the opportunity. The Board correctly concluded that Lin's request to reopen and terminate was untimely and it properly declined to entertain his claim that the IJ improperly sustained the removal charge against him, 8 C.F.R. § 1003.23(b)(1), (b)(4)(ii).

For the foregoing reasons, we will deny the petition for review.